STATE, EX REL. CITY OF OMAHA, APPELLANT, V. OMAHA WATER COMPANY, APPELLEE.

FILED JUNE 13, 1911.   No. 17,095.

1. Municipal Corporations: WATER-MAINS: AUTHORITY OF CITY ENGINEER. The charter of the city of Omaha does not vest the city engineer with authority to compel the water company to elevate its water-mains.

2. ———: ———: Authority of City. The fact that the city council and the mayor adopted plans prepared by its engineer for a city sewer does not in itself amount to an exercise of the police power, so as to require the water company to elevate a water-main unexpectedly encountered by the contractor in constructing the sewer according to those plans.

Appeal from the district court for Douglas county: George A. Day, Judge. *Affirmed.*

*John A. Rine, W. C. Lambert* and *Clinton Brome,* for appellant.

*Stout & Rose, contra.*

Root, J.

This is a proceeding in mandamus to compel the respondent to elevate a water-main at the point in Eighteenth street where it intersects the path of a proposed sewer. The respondent prevailed, and the relator appeals.

In January, 1910, the city council and the mayor of the city of Omaha approved plans theretofore prepared by its engineer for a sewer in Burt street in that city. Subsequently about nine feet below the surface at the intersection of Eighteenth and Burt streets the contractor encountered a 24-inch water-main. Thereupon the assistant city engineer served a written notice upon the respondent to elevate the main, so that the sewer might be constructed beneath. On the 24th day of that month the city engineer served upon the respondent a second notice of like import, but withdrawing a previous offer that the city would pay the expense incurred.

The return to the writ relates principally to the alleged expense of elevating the main, the public inconvenience that will follow a temporary loss of the use of the pipe to convey water to the respondent's customers, and the probability of accidents; that the sewer can be constructed so as not to interfere with its efficiency or with the water-main; and that the respondent is willing to comply, if in-

demnified against damages caused by the undertaking and will be paid by the city the expense incurred. The city officials do not seem inclined to yield to the respondent's suggestion that it is not necessary from an engineering standpoint that the water-main should be disturbed. If we should believe the uncontradicted evidence adduced by the respondent, the relator by changing the form of the sewer into an ellipse at the point where it passes the water pipe, but preserving the same area and floor level as obtain in other sections of the sewer, will have as efficient a drain as if the bore were circular. The water pipe is the main artery serving the city of South Omaha and parts of the city of Omaha with water. There seem to be no insurmountable difficulties in the way of elevating the water-main, although the expense will be considerable and some of the respondent's customers may be inconvenienced during the time water must be excluded while the change is being made. It would seem, under the circumstances, that the contending parties should act in harmony to serve the public interests with a minimum of expense.

We do not question the relator's right in a proper exercise of the police power to compel the respondent to change the position of its water-mains to accommodate sewers constructed by the city subsequent to the time the pipes were laid in the streets, but we fail to discover any allegation in the affidavit and motion, which seem to have been employed in the place of an alternative writ, that the city by ordinance or otherwise has exercised that power, nor do we find in the bill of exceptions any proof that this power was exercised in the instant case. We cannot accept the relator's argument that the mayor and the city council by approving the plans prepared by the city engineer exercised their authority to compel a change in the position of this water-main. A copy of the plans is in evidence, and no reference is made to the water-main. The engineer testifies, in substance, that the plans were prepared on the assumption that the sewer when completed would be beneath the water-main, and therefore no

scheme was adopted for elevating it. When the unexpected happened, the city engineer and his assistant evidently assumed that the engineer had authority by virtue of his office to compel the respondent to take the action demanded.

Sections 43-47, ch. 12a, Comp. St. 1909, specify the duties and authority of the city engineer. Section 43 provides: "He shall perform such other duties as may be required by this act or by ordinance." In section 47 we find the direct legislative grant of authority to the engineer with respect to the control of water-mains. It, is as follows: "He (the city engineer) shall supervise all sewer work and the construction, maintenance, cleaning and repairing of public sewers, culverts, drains, conduits and subways. * * * He shall be empowered, where necessary for the furtherance of public works or the abatement of nuisance, to cause the temporary suspension of the use of water, gas, sewer, or other service, or to cause the temporary removal of or discontinuance of railway tracks, or street car or other travel. * * * He shall prepare plans, specifications and contracts to be approved by the mayor and council for all public works to be done under his supervision, and he shall change or modify such plans and specifications when directed by the mayor and council." No ordinance extending this authority is in evidence, nor do counsel argue that one has been enacted.

No highly technical skill is involved in removing railways from the surface of a street, whereas changing the position of water-mains forming part of an intricate system supplying a great city with water involves technical skill, the expenditure of considerable money, more or less inconvenience to customers dependent upon the water company for their supply of water, and something of a hazard to property interests. It is evident that the legislature did not intend to vest the control of the water system of cities of the metropolitan class in the city engineer. Since the city has not legislated on the subject and has not directed the respondent to elevate the water-main in ques-

tion, we conclude that the district court did not err in re-
fusing to compel the respondent to obey the orders of the
city engineer.  Something was said in the argument about
the alleged fact that the city is the beneficial owner of the
water-works.  No such an issue is tendered in the return,
nor, as we are at present advised, is the fact material.

The judgment of the district court is

AFFIRMED.